UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

EUGENE K. JONES-EL,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )        No. 2:18-CV-65-JMB
                                       )
CHANTAY GODERT, et al.,                )
                                       )
              Defendants.              )

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment (ECF Nos. 29 and 45) and various other motions filed by Plaintiff Eugene Jones-El ("Plaintiff"). (ECF Nos. 67, 69, 71, and 75) These motions have now been briefed, and the time for filing responsive pleadings has passed. The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

In his "Supplemental, or in the Alternative, Second Amended 1983 Civil Complaint" ("Second Amended Complaint"), Plaintiff names as defendants Missouri Department of Corrections ("MDOC"), Wardens Chantay Godert, Michelle Thompson, and William Jones ("Warden Defendants"), Deputy Director of MDOC Cindy Griffith ("Griffith"), classification staff members Leslie Labon, Tim Woods, Robert Henderson, Patricia Shoemyer, Taylor Preston, Ashely West, Krisitn Cutts, Lisa Bledsoe, Chris Powell, and Cheryl Maple ("Classification Defendants"), and librarian Cherry Pasley ("Pasley") (collectively "Defendants"). (ECF No. 23) Plaintiff names all Defendants in both their individual and official capacities. (ECF No. 23 at 4) Plaintiff is an inmate at Northeast Correctional Center ("NCC"), which is managed by MDOC.

At the time of the allegations, Plaintiff was incarcerated at NCC. Plaintiff has filed this

action under 42 U.S.C. § 1983[1] against officials and staff members at NCC, alleging that his constitutional rights were violated from November 7, 2017, to June 30, 2018,[2] by Defendants denying him basic hygiene items, such as a toothbrush and toothpaste, and legal and mailing supplies because his $7.50 per monthly stipend was removed from his inmate account as soon as it was deposited to pay his state court filing fees. Plaintiff claims that he repeatedly asked each of Defendants, in person and/or in writing, to provide him with basic hygiene items and legal and mailing supplies, but Defendants refused to provide him with such items, thereby forcing him to choose between having hygiene items and pursuing his claims in state court. Plaintiff alleges that

---

[1] The undersigned notes that Plaintiff initially filed this case in the Circuit Court of Pike County, Jones-El v. Godert, Missouri Case.net, No. 18PI-CC00029 (45th Jud. Cir. June 27, 2018), and on July 25, 2018, Defendants removed the case to this Court. In this case, Defendants paid the federal filing fee, so Plaintiff's request for leave to proceed *in forma pauperis* was denied as moot. (ECF No. 16) If Plaintiff had originally filed this case in this Court and sought to proceed *in forma pauperis*, Plaintiff would not have been able to proceed *in forma pauperis*, unless he showed that he "is under imminent danger of serious physical injury" inasmuch as Plaintiff has filed at least three cases that were dismissed as frivolous, malicious, or for failure to state a claim. See 28 U.S.C. §1915(g); Jones v. Joyce, Cause No. 4-10 CV 369 FRB (E.D. Mo. Apr. 5, 2010); Jones v. Joyce, Cause No. 4:09 CV 1972 CEJ (E.D. Mo. Dec. 30, 2009); Jones v. Sayle, Cause No. 4:98 CV 17 ERW (E.D. Mo. Feb. 27, 1998). In three other case, Jones v. Lombardi, Cause No. 1:13 CV 7 SNLJ (E.D. Mo. Jan. 17, 2013), Jones-El v. Lombardi, Cause No. 1:13 CV 43 SNLJ (E.D. Mo. Mar. 7, 2013), and Jones-El v. Stange, Cause No. 1:16 CV 5 SNLJ (E.D. Mo. Mar. 31, 2016), the Honorable Stephen Limbaugh dismissed Plaintiff's § 1983 cases, for three strikes under 28 U.S.C. § 1915(g), finding no allegations that would show that Plaintiff was in imminent danger of serious physical injury. Therefore, this Court would be unable to permit plaintiff to proceed *in forma pauperis* in this matter unless he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). A brief review of the Court's filing system has revealed at least twenty suits filed by Plaintiff since 2002. Plaintiff has distinguished himself as a frequent filer of prisoner civil right suits.

[2] In pleadings filed with the Court, including his Second Amended Complaint, Plaintiff seeks damages through December 3, 2018. Damages are limited to the date of filing of the complaint. Plaintiff cannot recover damages flowing from acts which occurred after the filing date of his original complaint, in this case, June 27, 2017. Dean Foods Co. v. Albrecht Dairy Co., 396 F.2d 652, 661 (8th Cir. 1968). But see Lawlor v. Loewe, 235 U.S. 522, 536 (1915) ("The rule is that the plaintiff should be entitled to recover damages that accrue after the filing date, provided they are proximately caused by the wrongful and illegal acts committed by the defendant before the complaint was filed").

he has suffered dental problems as a result and was unable to properly present his application to transfer to the Missouri Supreme Court.

At the outset, the Court finds that MDOC is entitled to judgment as a matter of law inasmuch MDOC is a division of the State of Missouri and therefore is not a person subject to suit under 42 U.S.C. § 1983. See Loccoo v. Florissant Police Dep't, 2008 WL 554254, at *2 (E.D. Mo. Feb, 27, 2008) ("[A] suit against the Missouri Department of Corrections … is, in effect, a suit against the State of Missouri … [and] the State of Missouri is not a 'person' for purposes of §1983 action and is absolutely immune from liability under §1983."); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 63, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983"). Furthermore, MDOC is also entitled to sovereign immunity under the Eleventh Amendment. See Webb v. City of Maplewood, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."). Therefore, because Plaintiff's claim against MDOC is brought under § 1983, Plaintiff cannot maintain a suit against MDOC and, therefore, MDOC is entitled to judgment as matter of law.

For reasons set forth below, the Court will grant in part and deny in part Defendants' motion for summary judgment and grant in part and deny in part Plaintiff's motion for summary judgment. Remaining for trial are Plaintiff's individual-capacity § 1983 claims for money damages and official capacity claims for prospective injunctive relief against all Defendants, except MDOC.

## I.    Factual Background

The facts are taken from Plaintiff's Second Amended Complaint (ECF No. 23), Defendants' Statement of Uncontroverted Material Facts and the exhibits attached thereto (ECF No. 47), Plaintiff's Separate Statement of Uncontroverted Material Facts ("Statement of Uncontroverted

Material Facts") (ECF No. 31), his Affidavit (ECF No. 40), and the exhibits filed in support of Plaintiff's complaint and his summary judgment motion. Plaintiff filed his Response to Defendants' Statement of Uncontroverted Material Facts (ECF No. 52); however, Defendants failed to file a response to Plaintiff's Statement of Uncontroverted Material Facts. Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all the disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E) ("Local Rule 4.01(E)"). As a result of Defendants' failure to submit responses to Plaintiff's Statement of Uncontroverted Material Facts, Defendants have not met the requirements of Local Rule 4.01(E) and are deemed to have admitted the facts set forth in Plaintiff's statement of material facts. Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd 232 F.3d 907 (8th Cir. 2000), cert. denied, 531 U.S. 877).

With this in mind, the Court accepts the following facts as true for purposes of resolving the cross motions for summary judgment.

### A. Defendants' Statement of Uncontroverted Material Facts (ECF No. 47)

At the time of the allegations, Plaintiff was incarcerated at NCC. (Id. at ¶ 3) The State of Missouri ("Missouri") pays "every inmate a stipend, which is like a monthly allowance, [of] $7.50…" enabling the inmates to purchase items from the prison canteen to "take care of your

basic hygiene needs, your legal supply needs, and any other needs." (Pltf's Oct. 25, 2018, depo. at 22) Each month, Missouri deposits a monthly stipend of $7.50 into Plaintiff's prisoner account, and each month MDOC deducts $1.50 for each lawsuit so his entire monthly stipend is applied toward the payment of the filing fees for his five lawsuits. (ECF No 47-4, Exh. D and Pltf's Oct. 25, 2018, depo. at 21-22, 41, 61, and 63) Plaintiff's inmate account statement dated November 11, 2017, to February 10, 2018, shows a monthly deposit of $7.50, with an average monthly balance of $0.12, after the five $1.50 deductions for the State Filing Fee Debt. (ECF No. 47-4, Exh. D) Each month, Plaintiff cannot use his $7.50 monthly stipend to purchase hygiene items, including toothpaste, or legal supplies. (Pltf's Mar. 25, 2019, depo. at 6-10) Plaintiff testified that it has been explained to him that none of his $7.50 monthly stipend remains available for purchase of hygiene items or legal supplies because "all of my money was taken for the court filing fees." (Pltf's Oct. 25, 2018, depo. at 33; Pltf's Mar. 25, 2019, depo. at 16) At his deposition, Plaintiff testified that, although he realized by filing lawsuits funds would be taken out of his inmate account, he did  not realize that his entire monthly stipend would go toward the payment of the five filing fees, leaving him without any funds to purchase hygiene items. (Pltf's Oct. 25, 2019, depo. at 29) Plaintiff stated that MDOC provides dental care to him, including teeth cleaning, every two to four weeks. (Pltf's Mar. 25, 2019, depo. at 26)

During his time of incarceration, Plaintiff filed at least six lawsuits: Jones[3] v. Johnson, Cause No. 4:09 CV 118 HEA (filed Jan. 15, 2009/closed Sept. 25, 2014) (case dismissed after parties reached a settlement (Exh. A)); Jones-El v. Huffman-Phillips, Cause No. 1:12 CV 70 ACL (filed April 30, 2012/Jan. 5, 2015) (case dismissed after parties reached a settlement (Exh. A)); Jones-El v. Lombardi, Missouri Case.net, No. 13MI-CV00499 (33rd Jud. Cir., filed Aug. 16,

---

[3] Although Defendants listed Plaintiff's name as Jones-El in this citation, Plaintiff had not changed his name at that time so the Court changed his name to Jones in the citation.

2013/closed April 26, 2016) (granting defendants' motion to dismiss finding that Plaintiff is barred from bringing this case in a Missouri state court because his access to court claims by defendants' failure to provide legal supplies to challenge his criminal conviction were the same ones previously adjudicated in federal court, <u>Jones-El v. Huffman-Phillips</u>, and noting that in settling his federal lawsuit, Plaintiff agreed to "release, acquit, and forever discharge not only the named defendants, but also others who may have been involved in allegedly denying him access to the courts"); <u>Jones-El v. Wallace</u>, Missouri Case.net, No. 16MI-CV00196 (33rd Jud. Cir., filed Apr. 5, 2016/closed Dec. 27, 2016) (granting defendants' motion to dismiss without prejudice Plaintiff's other extraordinary remedy); <u>Jones-El v. Dwyer</u>, Missouri Case.net, No. 06MI-CV00222 (33rd Jud. Cir., filed Mar. 30, 2006/closed Apr. 11, 2006) (denying Plaintiff's petition for writ of habeas corpus); and <u>Jones-El v. Godert</u>, Cause No. 2:18 CV 65 JMB (instant cause of action).

Plaintiff settled two of his prior lawsuits in September 2014 and received settlement funds in the amount of $4,000.00. <u>Jones v. Johnson</u>, Cause No. 4:09 CV 118 HEA (filed Jan. 15, 2009/closed Sept. 25, 2014) and <u>Jones-El v. Huffman-Phillips</u>, Cause No. 1:12 cv 70 ACL (filed April 30, 2012/closed Jan. 5, 2015); (ECF 47-1 at 5(a), Release and Settlement Agreement Exh. A). The Release and Settlement Agreement ("Agreement") provided that a check would issue in the amount of $4,000.00, payable to Plaintiff, and his attorney would "deposit the check into his law firm's trust account and distribute the entire amount as separately instructed by [Plaintiff]." (ECF 47-1 at ¶ 5a, Agreement) The Agreement further provided that the parties agreed that any settlement or judgment in favor of Plaintiff "will not be subject to attachment under the Missouri Incarceration Reimbursement Act."[4] (<u>Id.</u> at ¶ 5b) Plaintiff testified that at his direction, his counsel

---

[4] Under the Missouri Incarceration Reimbursement Act, the State may seek reimbursement of up to ninety percent of a prisoner's assets, which are defined to include a money judgment received from the State as a result of a civil action against one of its employees. Mo. Rev. Stat. § 217.827(1)(a).

gave the settlement funds to his mother because he feared that that if the funds were deposited into his inmate account, MDOC would use the funds for reimbursement fees for his room and board. (Pltf's Mar. 25, 2019, depo. at 12-15)  Plaintiff's mother did not use any of the $4,000.00 settlement funds for his benefit.  (Id. at 12)  Plaintiff testified that he understood that after he satisfied the court filing fees, the monthly $7.50 stipend would stay in his account and be available to purchase items from the prison canteen.  (Id. at 37, 40)

B. **Plaintiff's Second Amended Complaint and Exhibits** (ECF Nos.1, 23, 29, and 32)

According to Plaintiff's verified Second Amended Complaint,[5] Plaintiff filed this cause of action after being denied access to basic hygiene items and legal supplies and mailing materials, as well a notarized copy of his inmate account statement, from November 7, 2017, to June 30, 2018.[6] (ECF No. 23 at ¶ 9)  Plaintiff alleges that he has been without any money for more than three years because each month his entire $7.50 stipend goes towards payment of filing fees from the numerous, pending state lawsuits he filed prior to his arrival at NCC.  (Id. at ¶ 10)  Plaintiff's inability to purchase toothpaste and a toothbrush has caused tooth decay, pain, bleeding and infected gums, plaque build-up, foul breath, and the extraction of two teeth.  (Id.)  Plaintiff states that Defendants' failure to provide legal supplies, a notarized copy of his inmate account statement, and an example form of an application for transfer to the Missouri Supreme Court prevented him from timely and properly filing an application for transfer in Jones-El v. Missouri Dep't of Corrs., Missouri Case.net, No. SC97000 (Mo. Mar. 2, 2018).  Plaintiff also alleges that the denial of the

---

[5] A plaintiff's verified complaint is the equivalent of an affidavit for purpose of summary judgment, Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992), and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint.  28 U.S.C. § 1746.

[6] Although Plaintiff sets forth different dates in his pleadings, Plaintiff's recovery should be limited to the filing date of this action being the last date of recovery.  Dean Foods Co. v. Albrecht Dairy Co., 396 F.2d 652, 661 (8th Cir. 1968).

basic hygiene items, based on Prison Policies IS18-1.1 and 1.4, forced him to choose between pursuing his legal rights and having basic hygiene items, and Defendants also failed to provide an alternative means by which he could obtain hygiene items.  (Id. at ¶ 13)

In support of his original complaint, Plaintiff attached as exhibits a copy of his inmate account statement dated January 10 to June 10, 2018, and grievances he filed requesting legal and hygiene items.  (ECF No. 1-3 at 61-73 and 96-98)  The inmate account statement dated January 10 to June 10, 2018, shows a monthly deposit of $7.50, and an average monthly balance of $0.12, after the five $1.50 deductions for the State Filing Fee Debt.  (ECF No. 1-3 at 96-98)

On December 13, 2017, Plaintiff filed an Internal Resolution Request ("IRR"), requesting legal and hygiene items after repeatedly being denied such items.  (ECF 1-3 at 61)  In the Other Denial of Indigent Assistance dated December 14, 2017, MDOC denied Plaintiff's IRR requesting indigent hygiene and legal supplies, finding:

> According to IS8-1.1, a spendable balance is available to the offender for things upon which he/she chooses to spend the funds.  This includes filing fees, as it was the offender's choice to file a lawsuit and the offender has knowledge that a percentage of his/her offender account will be taken to pay the filing fees.  The $7.50 stipend is to provide reasonable court access and to prevent indigent status.  The only time an offender is considered to be truly indigent is when all of his/her funds are taken for reasons beyond their control, such as child support payments.

(ECF No. 1-3 at 62; MDOC's Institutional Services and Policy and Procedural Manual at IS8-1.1)

In his December 21, 2017, Offender Grievance, Plaintiff asserted that he has "repeatedly formally and informally asked the classification staffs and the security staffs to provide me with basic hygiene items and legal materials, such as toothpaste, toothbrush, deodorant, writing paper, stamps, pencil, and envelopes, because all my $7.50 is being taken each month for owed court filing fees, however, they all refuses[sic] to give me such even though they know that I am

indigent."[7]  (ECF No. 1-3 at 63)  In the Warden's Response, dated April 12, 2018, Godert made a finding that Plaintiff abandoned this complaint because he failed to lodge his Offender Grievance form until April 9, 2018, and noted this issue would not be addressed again because it had been addressed in a previous complaint.  (Id. at 64)  On April 18, 2018, Plaintiff filed an Offender Grievance Appeal, regarding the denial of hygiene items and legal supplies, claiming that he was indigent.  (Id. at 65)  Plaintiff asserted that he received his IRR response on December 21, 2017, and on that same day, he filed an Offender Grievance.  (Id.)  In the May 22, 2018, Grievance Appeal Response, Griffith denied Plaintiff's appeal, finding that the IRR response adequately addressed his complaint and noted that Plaintiff's "decision to incur discretionary spending regarding your filing fees, you do not qualify for hygiene or legal supply assistance."  (Id. at 66)

On February 6, 2018, Plaintiff filed an IRR, alleging a failure to provide a legal form, an application for transfer to the Missouri Supreme Court, and a notarized copy of his inmate account statement from January 1 through January 8, 2018, by the law librarian.  (Id. at 67)  Plaintiff alleged these inactions resulted in the Missouri Supreme Court denying his application for transfer as failing to be on the proper form and untimely.  (Id. at 68)  In a Memorandum dated February 6, 2018, Maple stated that Plaintiff had filed an IRR, alleging denial of legal materials and access to the courts.  Maple denied his IRR finding:

> According to IS 8-1.4 All offenders shall have reasonable access to law libraries, legal materials, and/or law library personnel, consistent with court imposed deadlines or applicable statute of limitations.  Information on how to obtain 42 U.S.C. 1983 Complaint Form and 28 U.S.C. 2254 Habeas Corpus shall be maintained in the library[.]  Amy forms approved by the administration shall be paid for by the offender unless they are eligible for assistance in accordance with institutional services regarding access to courts.  Library supplies, equipment, and furnishings should be purchased in support of library operations by using canteen funds in accordance with

_____

[7] The undersigned notes that although the Offender Grievance is dated December 21, 2017, by Plaintiff, the Offender Grievance bears the filed stamp date of April 9, 2018, is signed by the Warden on April 13, 2018, and dated April 6, 2018 at the top of the page.  (ECF No. 63)

department procedures regarding canteen operations.

(Id. at 69)  On February 20, 2018, Plaintiff filed an Offender Grievance, indicating that he would continue to complain about the prison's procedures regarding the unavailability of legal resources at NCC, the librarian's refusal to provide a copy the application for transfer form, and the failure to provide a notarized copy of his inmate account statement to him.  (Id. at 70)  In the Warden's Response dated April 2, 2018, the acting warden denied Plaintiff's grievance, finding that he did not have an approved qualified legal claim as required by policy IS 8-1.1 to allow him to be provided legal supplies.  (Id. at 71)  On April 6, 2018, Plaintiff filed an unsigned Offender Grievance Appeal, and on April 30, 2018, Griffith denied Plaintiff's appeal finding that he did not have a qualified legal claim on file and noting his "offender account has discretionary spending each month which disqualifies [him] from legal supply assistance."  (Id. at 73)

In a letter, dated January 8, 2018, the Clerk of the Missouri Supreme Court noted that Plaintiff's Application for Transfer was deficient as follows:

> The enclosed application for transfer, received on January 8, 2018, is not in compliance with the rules of this Court and it cannot be filed.  The application for transfer in this matter was due to be filed in this Court on or before January 5, 2018.  In addition to the application being received out of time, you failed to submit the filing fee or a current, original, certified copy of your inmate account statement, the Form No, 15 cover page to the application for transfer, a copy of the motion for rehearing and/or application for transfer filed in the court of appeals....

(ECF No. 32-1)

In support of his motion for summary judgment, Plaintiff attached as exhibits doctor and nurse encounter appointments from June 26 to September 20, 2018, showing treatment for gum swelling and poor oral hygiene with medication prescribed as treatment for his severe chronic periodontis.[8]  (ECF No. 32)  During the encounter appointments, Plaintiff reported not receiving

---

[8] None of the treating doctors or nurses are named as defendants in this action.

a toothbrush or toothpaste since November 2017. In the June 26, 2018, nurse encounter, the nurse "called to have pt provided with toothbrush and toothpaste." During the July 24, 2018, doctor encounter appointment, the doctor noted that Plaintiff "must initiate oral hygiene regimen" and filed a dentist encounter to schedule teeth cleaning for Plaintiff. The September 17, 2018, doctor encounter appointment noted that the doctor extracted one tooth and prescribed medication as treatment.

C. **Plaintiff's Statement of Uncontroverted Material Facts** (ECF No. 31)

In his Statement of Uncontroverted Material Facts, Plaintiff asserts that MDOC deposits a required $7.50 monthly stipend to all inmate accounts. (ECF No. 31 at ¶ 3) This monthly stipend is his only source of income, and without the monthly stipend, Plaintiff does not have sufficient funds to purchase basic hygiene items or legal supplies. (Id. at ¶ 4) Since January 15, 2019, Plaintiff asserts that his $7.50 monthly stipend has been withdrawn from his account to pay court filing fees. (Id. at ¶ 5) Plaintiff states that MDOC prison officials are required to provide indigent inmates with basic hygiene items, legal supplies, a notarized copy of their inmate account statement, and mailing supplies. (Id. at ¶¶ 7-10) Plaintiff further states that from November 7, 2017, to December 3, 2018, he repeatedly reported to the named Defendants, in person and in writing, that his $7.50 monthly stipend was automatically applied to court filing fees thereby precluding him from purchasing basic hygiene items, legal supplies, mailing supplies, and a notarized copy of his inmate account. (Id. at ¶¶ 12-13)

Plaintiff specifically identifies Warden Defendants, Classification Defendants, and Griffith as being responsible for providing him with basic hygiene items and that these Defendants refused all of his requests from November 7, 2017, through December 3, 2018. (Id. at ¶¶ 18, 21) Plaintiff states that he submitted Medical Services Request Forms, complaining of severe tooth and gum

11

pain caused by being denied basic hygiene items.  (Id. at ¶ 30)  Plaintiff states that, as result of Defendants' failure to provide him basic hygiene items, he has experienced tooth and gum pain, gum infections, and the extraction of teeth.  (Id. at ¶ 31)

Next, Plaintiff specifically identifies Warden Defendants, Classification Defendants, Griffith, and Pasley as being responsible for providing him with legal supplies and materials and that these Defendants refused all of his requests from November 7, 2017, to December 3, 2018. (Id. at ¶¶ 19, 22)  Plaintiff also states that, from January 1 to April 30, 2018, he requested an example form for transfer to the Missouri Supreme Court and a copy of his inmate account statement with the named Defendants but his requests were refused.  (Id. at ¶¶ 23-24)  Plaintiff also states that he discussed with Defendants and Pasley that he had pending civil cases in state court, Jones-El v. Mo. Dept. of Corrs., Missouri Case.net, No. SC97000 (Mo. Mar. 2, 2018) and Jones-El v. Stange, Missouri Case.net, No. SD35067 (Mo. Ct. App. July 6, 2017), but Defendants refused his requests to have a qualified legal claim verification form completed on his behalf.  (Id. at ¶ 25)

Plaintiff also specifically identifies Warden Defendants, Classification Defendants, and Griffith as being responsible for providing him with non-legal writing and mailing supplies but these Defendants refused all of his requests from November 7, 2017, to December 3, 2018.  (Id. at ¶¶ 20, 26)

Plaintiff states that MDOC Procedure Nos. IS8-6.1, IS8-1.1, and IS8-1.4 provide for the provision of basic hygiene items, legal supplies, mailing supplies, a notarized copy of his inmate account, and sample legal forms and/or applications under certain circumstances.  (Id. at ¶¶ 14-17) Plaintiff states that Warden Defendants, Classification Defendants, and Pasley failed to comply with MDOC Procedure Nos. IS8-6.1, IS8-1.1, and IS8-1.4, by failing to provide basic hygiene

items, legal supplies, a notarized copy of his inmate account statement, an example for of an application for transfer to the Missouri Supreme Court, and legal and mailing supplies.  (<u>Id.</u> at ¶ 27)

**D.  Affidavit of Eugene K. Jones-El** (ECF No. 40)

In his Affidavit, Plaintiff avers that Warden Defendants, Classification Defendants, Pasley, and Griffith have failed to provide him with basic hygiene items and legal and mailing supplies for more than three years although he repeatedly requested, in writing and in person, to be given such items .  (ECF No. 40 at ¶¶ 2-3)  Plaintiff further avers that his $7.50 monthly stipend has been withdrawn from his account to pay court filing fees.  (<u>Id.</u> at ¶ 4)  Because Plaintiff has no funds to purchase basic hygiene items and legal and mailing supplies, Plaintiff avers that he sustained tooth decay, gum pain and infections, swelling and bleeding gums, headaches, deterioration of his teeth and gums, and loss of teeth and a civil case being properly prepared and untimely filed with the Missouri Supreme Court.  (<u>Id.</u>)

## II.    Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under Rule 56(a), a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere

existence of some alleged factual dispute." <u>Anderson</u>, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. <u>Id.</u> at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. <u>Id.</u> at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. <u>Id.</u> at 255.

In this district, the movant's facts are deemed admitted if not specifically controverted by the party opposing the motion. E.D. Mo. L.R. 4.01(E). Nonetheless, where a party fails to respond to a motion for summary judgment, the Court should not treat this non-response as sufficient to dispose of the motion. <u>Roland v. Wallace</u>, 2017 WL 1196426, at *2 (E.D. Mo. Mar. 31, 2017). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." <u>Id.</u> "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in light most favorable to the party who would be opposing the motion." <u>Id.</u>

When cross motions for summary judgment are filed, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. <u>Husinga v. Federal-Mogul Ignition Co.</u>, 519 F.Supp.2d 929, 942 (S.D.Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." <u>Wermager v. Cormorant Township Bd.</u>, 716 F.2d 1211, 1214 (8th Cir. 1983). "The usual Rule 56 standard applies to cross-motions for summary judgment." <u>Int'l Brotherhood of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.</u>, 293 F.3d 402, 404 (7th Cir. 2002). In determining the appropriateness of

summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir. 1993) (quoting Anderson, 477 U.S. at 251-52).

## III.    Motions for Summary Judgment

In his Motion for Summary Judgment (ECF No. 29) and Memorandum in Support (ECF No. 30), Plaintiff asserts that Defendants were deliberately indifferent to a substantial risk of serious harm by refusing to provide basic hygiene items, such as a toothbrush and toothpaste, and legal and mailing supplies, from November 7, 2017, to June 30, 2018, because his $7.50 monthly stipend was withdrawn from his inmate account to pay court filing fees.  Plaintiff claims that he repeatedly asked each of the Defendants, in person and/or in writing, to provide him with basic hygiene items and legal and mailing supplies, but Defendants denied his requests and refused to provide him with such items, thereby forcing him to choose between having hygiene items and legal supplies or pursuing his claims in state court.  Plaintiff contends that he has suffered dental issues as a result and was unable properly present his application to transfer to the Missouri Supreme Court.  Plaintiff further claims that Defendants' failure to provide him with legal supplies violated his constitutional rights and denied him access to the courts and their failure to provide mailing supplies to indigent prisoners violated his constitutional rights under the First Amendment. In support of his motion, Plaintiff submitted an affidavit, institutional medical records, copies of his IRRs and grievances, and a copy of his inmate account statement.

In their Opposition (ECF No. 61), Defendants argue that sovereign immunity and qualified immunity protect them from Plaintiff's claims.  Defendants further argue that Plaintiff elected not to deposit his settlement funds in his inmate account so that he could purchase basic hygiene items

and legal supplies.

In his Reply (ECF No. 64), Plaintiff argues that the evidence in the record shows that Defendants knowingly and deliberately did not provide him with basic hygiene items and legal and mailing supplies, and Defendants do not deny not providing such items.

In their Motion for Summary Judgment (ECF No. 45), Defendants contend that "Plaintiff is not entitled to any State money for the purchase of the items he seeks from the prison commissary and because Plaintiff has been able to, but chose not to, purchase those items with his own money." Id. Defendants contend that there is no Eighth Amendment violation when an inmate chooses to file numerous lawsuits leaving him with no money to purchase hygiene items and legal supplies. Defendants do not dispute that Plaintiff's entire $7.50 monthly stipend was spent on court filing fees as permitted by the statutory requirements of 28 U.S.C. § 1915(b)(1). See Bruce v. Samuels, 136 S.Ct. 627, 62 ( (2016) (holding that the *in forma pauperis* statute calls for simultaneous, not sequential, recoupment of multiple filing fees incurred by an indigent prisoner and recognizing that a prisoner who had filed five actions could exhaust his prisoner account each month). Defendants point out that Plaintiff received $4,000.00 in settlement funds that he could have used to pay off his filing fees and to purchase hygiene items and legal supplies but he chose to give the settlement proceeds to his mother.[9]

---

[9] To the extent Defendants argue that Plaintiff was required to deposit his $4,000 settlement funds in his prison inmate account, this argument is without merit. Plaintiff received settlement funds in the amount of $4,000.00 from settlements of factually identical civil rights claims See Jones v. Johnson, 4:09 CV 118 HEA (ECF No. 47-1) and Jones v. Huffman-Phillips, 1:12 CV 70 ACL (ECF Nos.170-71). Although the record shows that Plaintiff did have settlement funds from which he could have paid at least part of his outstanding filing fees, he chose to spend his funds elsewhere. A review of the Agreement shows that Plaintiff was not required to deposit his settlement funds into his inmate account. If there had been a standard clause to that effect in the Agreement then Defendants' argument might have merit but that is not the case here.

In his "Response Motion in Opposition to Defendants' Summary Judgment Motion" (ECF No. 51), Plaintiff notes that Defendants failed to deny or refute their failure to provide him with basic hygiene items and legal and mailing supplies. Plaintiff further notes that Defendants failed to submit any evidence refuting his affidavit or uncontroverted material facts. Plaintiff also challenges Defendants' arguments regarding sovereign and qualified immunity. Plaintiff asserts that Defendants were deliberately indifferent to a substantial risk of serious harm to his health and denied him access to the courts.

In their Reply (ECF No. 61), Defendants again contend that Plaintiff chose not to use his settlement funds to pay off his court filing fees and if he had done so, he would have had funds to purchase hygiene items and legal supplies. Defendants argue that they are entitled to sovereign immunity with respect to Plaintiff's claims against them in their official capacity and qualified immunity with respect to Plaintiff's claims against them in their individual capacities.

In his "Response in Opposition to Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment" and "Second Response in Opposition to Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment" (ECF Nos. 54 and 55), Plaintiff makes the same arguments asserted in his other pleadings. Plaintiff also notes that Defendants failed to refute any of his uncontroverted material facts.

IV.    **Discussion**

Plaintiff's Second Amended Complaint named Defendants in both their individual and official capacities. Defendants assert that they are entitled to sovereign immunity for Plaintiff's claims against them in their official capacities and to qualified immunity with respect to the claims against them in their individual capacities.

### A. Official Capacity Claims

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri.  <u>Will</u>, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983."); <u>See</u> <u>also</u> <u>Calzone v. Hawley</u>, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"); <u>Veatch v. Bartels Lutheran Home</u>, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").  "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." <u>Id.</u>   As such, Plaintiff's official capacity claims are actually against Missouri, the governmental entity that employs Defendants.  <u>See</u> <u>Hafer v. Melo</u>, 502 U.S.  21, 25 (1991) ("[T]he real party in interest … is the governmental entity and not the named official.").  However, a state is not a "person" for purposes of § 1983.  Accordingly, to the extent Plaintiff is attempting to sue Defendants for money damages, his official capacity claims are barred by the Eleventh Amendment and  judgment will be entered in favor of Defendants. <u>Andrus ex rel. Andrus v. Arkansas</u>, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."); <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

Plaintiff alleges that Defendants are all employed by NCC.  (ECF23 at 3-4)  NCC is part of MDOC, which is a state agency of the State of Missouri.  As noted above, Plaintiff's official capacity claims against each individual defendant are really claims against that Defendant's employer.  As such, Plaintiff's official capacity claims are actually claims against the State of

Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against officials acting in their official capacity. Accordingly, Plaintiff's official capacity claims for monetary damages are barred.

To the extent Plaintiff seeks prospective injunctive relief against Defendants in their official capacities, Plaintiff's claims are not barred. Individual members of a state department may be sued in their official capacities for prospective injunctive relief. Will, 491 U.S. at 71 n.10; Fond du Lac Band of Chippewa Indians v. Carlson, 68 F.3d 253, 255 (8th Cir. 1995) ("suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law."); Robinson v. Dept. of Ins., Cause No. 4:18 CV 1527 CDP, at 4 (Oct. 18, 2018) (same). Plaintiff has established on the record that Defendants' policy or custom played a part of the allegedly unconstitutional actions taken by Defendants that would subject them to liability in their official capacities. Because Plaintiff's Second Amended Complaint seeks prospective injunctive relief, Defendants in their official capacities are not entitled to judgment on Plaintiff's prospective injunctive relief claim.

### B. Qualified Immunity

Defendants argue that they are entitled to judgment on Plaintiff's individual-capacity § 1983 claims because they are entitled to qualified immunity.

Qualified immunity shields public officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To resolve a government official's claim of qualified immunity, courts apply a two-part test, asking whether the plaintiff has demonstrated a violation of constitutional right and whether that constitutional right was clearly established at the time of the violation. Williams v.

Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing Harlow, 457 U.S. at 818). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). These questions may be addressed in either order. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Before addressing the merits of Defendants' assertion that they are entitled to qualified immunity, three predicate issues must be addressed. First, the evidentiary record in support of the motions for summary judgment consists solely of Plaintiff's verified Second Amended Complaint, the Agreement, excerpts from Plaintiff's depositions, a copy of Plaintiff's inmate account from November 11, 2017, to June 10, 2018, Plaintiff's Affidavit, and copies of some of Plaintiff's grievances and medical records. Defendants have not presented an affidavit or declaration.

Second, Defendants have not filed a response to Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 31) and, as a consequence, they are deemed to have admitted the facts set forth therein. See Local Rule 4.01(E) ("All matters set forth in the statement of [uncontroverted facts] shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"). This admission of relevant facts frequently creates an insurmountable barrier to the nonmoving party.[10]

---

[10] Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In his Second Amended Complaint, Plaintiff asserts that each of these individual Defendants should be liable for what occurred to him because they are either supervisors in their capacity as wardens, classification staff members, or the librarian at NCC. Plaintiff sets forth factual assertions indicating that the named Defendants were directly involved

Third, Plaintiff's Second Amended Complaint raises two claims: (1) Defendants' failure to provide Plaintiff with mailing and legal supplies in violation of his constitutional rights by denying him access to the courts; and (2) Defendants' deliberate indifference to his basic hygiene needs in violation of the Eighth Amendment by failing to provide an alternative source of hygiene items. In their motion for summary judgment, however, Defendants fail to address theses claims, asserting that sovereign and qualified immunity shield Defendants from Plaintiff's claims.

## 1) First Amendment Claims

### (a) Access to the Courts

Plaintiff claims that Defendants hindered his application for transfer to the Missouri Supreme Court and cites to his Second Amended Complaint, Affidavit, and Statement of Uncontroverted Material Facts in support. Plaintiff further contends that he was actually injured in regard to an arguably meritorious legal claim by failing to meet the filing deadline.

The United States Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" and to furnish "paper and pen to draft legal documents" and "stamps to mail them." Bounds v. Smith, 430 U.S. 817, 824, 828 (1977). The Constitution encompasses a prisoner's right to access the courts to attack their sentences or challenge the

---

in or personally responsible for the alleged violations of his constitutional rights and groups all of Defendants together without attributing specific actions to a particular defendant or providing specific dates of the violations. Although general responsibility for supervisory responsibilities cannot establish personal involvement, see, e.g., Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), Defendants' failure to respond has resulted in Defendants admitting the facts set forth in Plaintiff's Statement of Uncontroverted Material Facts wherein Plaintiff identified by name each Defendant and how each Defendant was directly involved in or personally responsible for the violation of his constitutional rights.

conditions of their confinement.  Lewis v. Casey, 518 U.S. 343, 355 (1996).  "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hinderance of a nonfrivolous and arguably meritorious underlying legal claim."  Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).  To prove actual injury, a prisoner must demonstrate a nonfrivolous legal claim was frustrated or impeded.  Id. at 832.

Plaintiff has alleged that Defendants' failure to provide legal supplies, a notarized copy of his inmate account statement, and an example form of an application for transfer to the Missouri Supreme Court, prevented him from timely and properly filing for transfer in Jones-El v. Missouri Dep't of Corrs., Missouri Case.net, No. SC97000  (Mo. Mar. 2, 2018).  An independent review of Plaintiff's case on Missouri Case.net, the State of Missouri's online docketing system, shows that on March 26, 2018, the Missouri Supreme Court entered an order that provided as follows: "Appellant's motion for leave to file application for transfer out of time overruled."  Id.  This Court takes judicial notice of the Missouri State Courts records, as obtained through the public records published on Missouri Case.net.  See Levy v. Ohl, 477 F.3fd 988 (8th Cir. 2007) (district court may take judicial notice of public state records); Stutzka v. McCarville, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records").  Taking Plaintiff's allegations as true, Plaintiff has shown that he was prejudiced by dismissal of his claims in the Missouri Supreme Court.

On the unrefuted record, Plaintiff has shown that the lack of legal resources deprived him of some specific opportunity to advance an arguably meritorious legal claim but he failed to overcome one further hurdle before he can recover on this access to courts claim.  See Lewis, 518

U.S. at 351-52 (A prisoner asserting a claim of violation of access to the courts must establish an actual injury in order to prevail on a § 1983 claim premised on that right.).  Plaintiff has failed to prove that he was actually injured by demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded."  White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007); Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (To succeed on an access to courts claim, a plaintiff must demonstrate that  a nonfrivolous legal claim had been frustrated or was being impeded.").  Because the actual injury requirement applies only to frustration of a nonfrivolous legal claim, an inmate's access to the court's claim fails where he makes no showing that his legal claim was nonfrivolous.  Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001).  Here, Plaintiff failed to establish that a nonfrivolous legal claim had been frustrated or impeded.  The Court therefore concludes that, based on the averments in his affidavit and his unrefuted Statement of Uncontroverted Material Facts, Plaintiff has failed to establish a claim of denial of access to courts in violation of the First Amendment in the absence of proof that he has suffered any actual prejudice to a nonfrivolous claim.  Accordingly, Plaintiff's Motion for Summary Judgment will be denied as to this claim.

### (b) Denial of Mail Privileges

Plaintiff alleges that Defendants' failure to provide him mailing supplies as an indigent prisoner violated his constitutional rights under the First Amendment.  Plaintiff asserts that he did not have access to an alternative source for receiving mailing supplies.  Defendants have not argued that they are entitled to qualified immunity as to this claim so the undersigned will not address whether qualified immunity protects Defendants from this claim.

"The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."  Jones v. North Carolina

Prisoners' Union, 433 U.S. 119, 125 (1977).  Inmates have a First Amendment right of free speech to send and to receive mail.  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  Inmates do not have an established right to unlimited free access to the mails, Blaise v. Fenn, 48 F.3d 337, 339 (8th Cir. 1995), or unlimited free postage.  See Smith v. Erickson, 884 F.2d 1108, 1111 (8th Cir. 1989); Herschberger v. Scaletta, 33 F.3d 955, 957 n.4 (8th Cir. 1994) (inmates could receive free postage for personal mail through their prison counselor); Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir. 1984) (inmates could receive postage assistance through the chaplain's fund).  The provision of two free mailings per week for indigent prisoners satisfies constitutional standards.  See Smith v. Erickson, 961 F.2d 1387, 1388 (8th Cir. 1992) (policy of providing indigents with one free mailing per week for legal correspondence satisfies constitutional standards).

Plaintiff has demonstrated that Defendants failed to provide him with any mailing supplies or another means by which he could obtain mailing supplies based on the unrefuted summary judgment record.  The Court therefore concludes that based on the averments in his affidavit and his unrefuted Statement of Uncontroverted Material Facts, Defendants violated Plaintiff's First Amendment rights by failing to provide Plaintiff with mailing materials or another means by which he could obtain mailing supplies.  Accordingly, Plaintiff's Motion for Summary Judgment will be granted as to this claim.

### 2)  Eighth Amendment Claims

In his Motion for Summary Judgment, Plaintiff argues that Defendants were deliberately indifferent to a substantial risk of harm to him by refusing to provide basic hygiene items.  Again, Plaintiff indicates that his only source of income is the $7.50 monthly stipend, and from November 7, 2017, through June 30, 2018, the entire monthly stipend each month was withdrawn from his inmate account to pay for court filing fees.  Defendant argues that, although Plaintiff does not have

any money left to purchase hygiene items after his $7.50 monthly stipend is deducted from his inmate account, this does not amount to cruel and unusual punishment. Defendants do not dispute that Plaintiff's entire $7.50 monthly stipend each month was spent on court filing fees. Plaintiff contends that he repeatedly and routinely asked each Defendant, in person and/or in writing, to provide him with basic hygiene items, such as toothpaste and toothbrush, but each request was denied and no hygiene items were given to him. As a result, Plaintiff contends that he sustained tooth decay, gum pain and infections, swelling and bleeding gums, headaches, deterioration of his teeth and gums, and loss of teeth. In support of his motion, Plaintiff has submitted his Affidavit, institutional medical records, copies of his IRRs and grievances, and a copy of his inmate account statement from January 10 through June 10, 2018.

In their Motion for Summary Judgment, without citing any legal support, Defendants assert that they do not need to provide Plaintiff with toothpaste or a toothbrush because MDOC provides Plaintiff with a dentist who cleans his teeth every two to four weeks. Defendants have not addressed Plaintiff's Eighth Amendment arguments. Defendants' contention that qualified immunity shields them from liability for their choice to apply Plaintiff's $7.50 monthly stipend on court filing fees leaving Plaintiff with no funds to purchase hygiene items choice is without merit.

"The Constitution does not mandate comfortable prisons; it prohibits inhumane ones." Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (internal quotation omitted). The Eighth Amendment's requirement that "humane conditions of confinement" be provided by prison officials, see Farmer v. Brennan, 511 U.S. 825, 832 (1994), "include[s] provision of basic hygiene." Whittington v. Ortiz, 307 Fed. Appx. 179, 186 (10th Cir. Jan. 13, 2009) (unpublished opinion) (prison policy that inmates must buy hygiene products, and that they are not able to afford both hygiene products and constitutionally protected litigation, violated Eighth Amendment.). Personal

hygiene items are among the basic human necessities to which prisoners are entitled. <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under § 1983). <u>See</u> <u>also</u> <u>Scott v. Carpenter</u>, 24 Fed. Appx. 645, 647 (8th Cir. 2001) (stating that basic personal hygiene is "within the minimal civilized measure of life's necessities to which a prisoner is entitled"). "A long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." <u>Myers</u>, 101 F.3d at 544. Moreover, policies forcing prisoners to choose between their legal rights and having hygienic products violate the Eighth Amendment. <u>See</u> <u>Whittington</u>, 307 Fed. Appx. at 189; <u>Kennan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996), <u>opinion amended on denial of reh'g</u>, 135 F.3d 1318 (9th Cir. 1998) (material issue of fact precluded summary judgment where inmate alleged that prison officials violated Eighth Amendment by failing to provide inmate with basic hygiene products, forcing inmate to choose between legal supplies and hygiene products).

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective." <u>Irving v. Dormire</u>, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The defendant's conduct must result in the denial of the "minimal civilized measure of life's necessities." <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Mere discomfort or temporary adverse conditions which pose no risk to health or safety do not implicate the Eighth Amendment. <u>Whittington</u>, 307 Fed. Appx. at 187. "The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." <u>Id.</u> (internal quotation and citations omitted). Eighth Amendment cases are analyzed in the light of the specific claim raised. In prison conditions claims, which include threats to an inmate's health and safety, the subjective inquiry is whether the prison officials were deliberately indifferent to a serious risk

of harm to the inmate.  Farmer, 511 U.S. at 834 ; Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005) (internal quotation omitted) ("[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of reckless disregard of the known risk.").

As discussed earlier, Plaintiff's Statement of Unconverted Material Facts are deemed admitted because Defendants failed to file a response thereto.  As a result of Defendants' failure to submit responses to Plaintiff's Statement Uncontroverted of Material Facts, Defendants are deemed to have admitted the facts set forth in Plaintiff's Statement of Uncontroverted Material Facts.  Turner, 2010 WL 2555114, at *2.  Plaintiff has responded to all of the facts alleged by Defendants and has pointed to specific evidence upon which he relies in support of his motion for summary judgment.

Courts have found that under certain circumstances, the deprivation of hygiene items, can rise to the level of unconstitutional conditions of confinement.  Based on Eighth Circuit precedent as well as two earlier cases filed by Plaintiff, it is clearly established that inmates cannot be denied long term and repeated access to hygiene items.  In a case involving the same Plaintiff and nearly identical issues, the Court held that "[t]he denial of basic hygiene items such as a toothbrush and toothpaste for a sufficiently long period of time transcends mere discomfort or temporary adverse conditions."  Jones v. Johnson, 2014 WL 50853, at *4 (E.D. Mo. Jan. 7, 2014).  As such, a long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates.  Myers, 101 F.3d at 544; Whittington, 307 Fed. Appx. at 186 (The Eighth Amendment requirement that humane conditions of confinement by provided by prison officials includes the provision for basic hygiene.).  Moreover, as noted above, policies forcing prisoners to choose between having hygiene products violate the Eighth Amendment.  See Whittington, 307

Fed. Appx. at 189 (prison policy that inmates must buy hygiene products and that they are not able to afford both hygiene products and constitutionally protected litigation violated Eighth Amendment).  Plaintiff has established the objective component of his Eighth Amendment claim by showing Defendants' seven month deprivation of access to hygiene items such as a toothbrush and toothpaste.  See Penrod v. Zavaras, 94 F.3d 1399, 1496 (10th Cir. 1996) (reversing grant of summary judgment for defendant where prisoner alleged lack of toothpaste for two months caused his gums to bleed and recede and caused tooth decay that required treatment by a dentist).

As to the subjective component, "[t]he subjective component requires that the official was both aware of factors from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference."  Davis v. Oregon Cnty., Mo., 607 F.3d 543, 548-49 (8th Cir. 2010).  Plaintiff has shown that Defendants have violated his constitutional rights by failing to provide hygiene items as he requested, in person and in writing, from Defendants, and Defendants have neither refuted nor disputed this showing.  The undisputed facts show that Defendants were aware Plaintiff was not receiving basic hygiene items and acted with deliberate indifference in failing to assist Plaintiff in procuring such items based on Plaintiff's choice to spend his monthly stipend on court filing fees, instead of purchasing a toothbrush and toothpaste.

The undisputed facts show that Plaintiff repeatedly complained, informally and formally, about his lack of hygiene items starting on November 17, 2017, through June 30, 2018.  Plaintiff filed an IRR, a grievance, and a grievance appeal, challenging Defendants' decision not to provide hygiene items based on his indigent status.  Defendants have not refuted Plaintiff's evidence that they failed to provide Plaintiff with hygiene items.  Nor have Defendants filed an affidavit averring that they provided Plaintiff with basic hygiene items.  On this record, Plaintiff has established Defendants were aware that he was not being provided with dental hygiene items, and Defendants

were deliberately indifferent to his serious risk of harm to his health due to their denial of these hygiene items. Thus, Defendants are not entitled to summary judgment on the basis of qualified immunity.

Plaintiff is entitled to summary judgment because he showed an unconstitutional deprivation of hygiene items and established for purposes of summary judgment that he suffered injuries resulting from the denial of the requested hygiene items on the unrefuted record. Plaintiff submitted his institutional medical records, affidavit, and Statement of Uncontroverted Material Facts which showed treatment for pain, tooth decay, bleeding and infected gums, plaque build-up, foul breath, and the extraction of two teeth. Defendants have not submitted any evidence refuting Plaintiff's assertions, nor have Defendants refuted Plaintiff's Statement of Uncontroverted Material Facts. Moreover, Plaintiff has demonstrated that Defendants were aware of and disregarded an excessive risk to his health by denying him hygiene items and showed he suffered an actual, objectively serious injuries. Accordingly, Plaintiff's Motion for Summary Judgment will be granted as to his Eighth Amendment claim.

## V. Conclusion

For the reasons discussed above, the Court will grant in part and deny in part the parties' motions for summary judgment. Specifically, Defendants and MDOC are entitled to sovereign immunity as to Plaintiff's claims for monetary damages against them in their official capacities but Plaintiff can seek prospective injunctive relief against Defendants in their official capacities. Defendants are not protected from liability by qualified immunity in their individual capacities as to Plaintiff's denial of mail privileges, and Eighth Amendment claims for money damages.

Although the Court will grant summary judgment in part in favor of Plaintiff on the basis of liability, it cannot grant summary judgment for damages because the factual predicate for any

amount of damages is lacking. Thus, remaining for trial are Plaintiff's claims for money damages against Defendants in their individual capacities and prospective injunctive relief in their official capacities.

**IT IS HEREBY ORDERED** that Plaintiff Eugene Jones-El's Motion for Summary Judgment (ECF No. 29) is GRANTED in part as to Warden Defendants, Classification Defendants, and Griffith in their individual capacities as to his denial of mail privileges and Eighth Amendment claims for money damages and DENIED in part as to MDOC and all Defendants as to their official capacity claims except for Plaintiff's prospective injunctive relief claim and as to Warden Defendants, Classification Defendants, Griffith and Pasley in their individual capacities as to his access to the courts claim for money damages.

**IT IS FURTHER ORDERED** that Plaintiff's "Order to Show Cause and Temporary Restraining Order" (ECF No. 65) is Denied without Prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motions "to Request the Court to Reinstate Plaintiff's Motions for the Court to Rule that the Defendants are not Entitled to any kind of Immunity Defenses or Protections, and nor are They Entitled to Summary Judgment Relief (ECF No. 42)" (ECF No. 67) and "for the Court to Take Judicial Notice of the Fact that the Defendants did not Deny, nor Refute any of Plaintiff's Claims made Against Each and Every Last one of Them Named" (ECF No. 69) are Denied as Moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motions "Requesting the Court to Please Issue It's Ruling on All Motions, Including Summary Judgment Motions that is Pending Before the Court" and "for Order Disqualifying the Honorable John M. Bodenhausen and Transferring the Cause to Another Judge" (ECF Nos. 71 and 75) are Denied as Moot.

**IT IS FURTHER ORDERED** that Defendants Chantay Godert, Michelle Thompson,

William Jones, Cindy Griffith, classification staff members Lisa Bledsoe, Kristin Cutts, Robert Henderson, Leslie Labon, Cheryl Maple, Chris Powell, Taylor Preston, Patricia Shoemyer, Ashley West, Tim Woods, librarian Cherry Pasley, and the Missouri Department of Corrections' Motion for Summary Judgment (ECF No. 45) is GRANTED in part as to MDOC and all Defendants to the extent that Plaintiff's claims for monetary damages against Defendants in their official capacities and DENIED in all other respects as to Defendants in their individual capacities.

**IT IS FURTHER ORDERED** that Keith Grady, 100 South Fourth Street, St. Louis, Mo. 63102, telephone number (314-552-6883), is appointed to represent Plaintiff for discovery on damages and a jury trial on the issue of damages and prospective injunctive relief only, and the Clerk will provide appointed counsel with copies of the complete case file without charge.

**IT IS FURTHER ORDERED** that the Court will hold a status conference with counsel only on Thursday, January 9, 2020, at 1:30 p.m**.**

**IT IS FURTHER ORDERED** that judgment will be entered at the conclusion of all matters pending herein.

This case will be set for trial on Plaintiff's claims for money damages by a separate order.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of December, 2019.